May it please the court. My name is Dave Roland. I represent the appellant, Mr. Ron Calzone. The U.S. Supreme Court in Marshall v. Barlow's Inc. explained the historical setting from which the Fourth Amendment emerged. It pointed out that prior to the American Revolution, the British Crown would issue writs of assistance, also known as general warrants, that authorized representatives of the crown to engage in suspicionless searches of colonists and their property. The colonists were so outraged at this practice, at this violation of their privacy and their property, that they demanded the adoption of a Fourth Amendment that would ensure that Americans had a right to go about their business free from unreasonable government intrusions. The U.S. Supreme Court said in Marshall v. Barlow's Inc. that that right is jeopardized if the government inspector may without any suspicion of wrongdoing. Such a seizure or search infringes on citizens' privacy, whether the government's motivation is to investigate crime or whether it's motivated to investigate breaches of other statutory or regulatory standards. In this case, the government contends that Mr. Calzone voluntarily waived this right protected by the Fourth Amendment. He did not. The U.S. Supreme Court has said that the closely regulated industry, exception to the Fourth Amendment, is limited to pervasively regulated businesses where the business person has voluntarily chosen to subject him or by sacrificing their privacy, they are obtaining the right, the freedom, to earn a profit in this closely regulated industry. This exception to the Fourth Amendment is not applicable where the person searched was not engaged in any regulated or licensed business. That's from Barlow's Inc. at both parties agree on and the district court agreed on is that Mr. Calzone is not a professional commercial trucker. He owns a horse and cattle ranch and he has a truck that he occasionally drives solely for the purpose of transporting his own property in support of his horse and cattle ranch. He had that vehicle registered as a local commercial vehicle under Missouri law with a farm tab indicating that it was only to be used for support of a farm. Under Missouri law, having those designations means that you are prohibited from using that vehicle for hire to transport people or property in return for compensation. And in the absence of that hire, in the absence of earning any money in return for transporting someone else's goods or some other people, Mr. Calzone cannot in professional commercial trucking. I think part of the error that was made at the district court is the title that has been given to this industry, both at the federal level and in the state of Missouri, the state and the federal government heavily regulate motor carriers. And motor carriers are persons and property for hire. Because the vernacular recognizes that this is generally considered professional commercial trucking, that's the label that has stuck in cases that have dealt with this industry. And the mistake that has been made is the assumption that because Missouri law labels certain vehicles as commercial vehicles, they must necessarily be considered participants in this motor carrier industry. That's the situation we have here. It is true that Missouri law defines Mr. Calzone's farm vehicle as a commercial vehicle. It is also true, and has been the law in Missouri for more than 60 years, that every half-ton pickup truck in the state is by definition a commercial vehicle. Furthermore, any economy class car that is regularly used to transport merchandise is by definition under Missouri law, a commercial vehicle. The state does not distinguish between these different types of quote-unquote commercial vehicles. As far as the state is concerned. His dump truck would be the same as a small panel van. As far as the definition of commercial vehicle under Missouri law is concerned, yes, Your Honor. The definition of commercial vehicle that they have relied on does not make that distinction. I think it's also important to point out that although this matter has been somewhat overlooked in the course of this case, there are three separate subsections that Mr. Calzone challenged in bringing this lawsuit. Two of which authorized the suspicionless search and seizure of almost every vehicle on Missouri's highways and interstates, whether or not they're classified as commercial vehicle. It is only subsection seven of the statute that addresses commercial vehicles as a group. And that is the provision that the government has said is at issue here. But in fact, it's actually all three of these different subsections, whether or not the vehicle is labeled as a commercial vehicle. But the central point, the dispositive point in this case, is that the U.S. Supreme Court has said repeatedly, consistently, that this closely regulated industry exception only kicks in when the person to be searched is engaged in a regulated business. Because Mr. Calzone plainly is not, the exception cannot be applied to him. It is actually affirmatively dangerous. Which Supreme Court case do you side for that proposition? There's a whole string of them, Your Honor. Well, just give me one good one. Well, I think Barlow's Inc. is the one that I would rely on primarily. But I also think that Patel, the 2015 U.S. Supreme Court decision that said that hotels cannot be considered a closely regulated industry, they emphasized that participating in a business is a critical aspect of falling within this closely regulated industry exception. And Patel is important for another reason, Your Honor. In Patel, the majority pointed out that we are running the risk of allowing this closely regulated industry exception swallow the rule. They noted that many of the circuit courts have recognized a wide array of industries that they would contend are closely regulated within the meaning of New York versus Berger. But the Supreme Court suggested that maybe that was overstepping what they had authorized, what they had justified with their own cases dealing with this exception to the Fourth Amendment. And in fact, that's why they drew a line with Patel. They said it is not sufficient that a business owner, and they were focusing on business owners in that case, is subject to- The 2015 case. What was that? The 2015 case. Yes, City of Los Angeles versus Patel. They said it's not sufficient that a business owner be subject to a wide array of regulation. The regulation itself has to be both comprehensive and distinctive, setting the regulated industry apart from other businesses. That's Patel at page 2454, Your Honor. In this situation, we have pointed out in our briefing that Mr. Calzone, although certainly subject to some of the regulations that are applicable to all vehicle drivers, some regulations that would only govern large vehicle drivers, he is exempt from a vast array of the motor carriers. Again, that's, I think, the proper label for the industry that arguably is closely regulated. But the regulations that bind him are not as narrowly devised nor as distinctive to his situation as the Supreme Court suggested was necessary under Patel. Outside of the general bright line rule, well, let me state what we believe the bright line rule really ought to be. The closely regulated industry exception cannot reasonably apply to someone who's not participating in a business related to that industry. In this particular situation, we have heard the government suggest they're concerned that law enforcement officials might not be able to distinguish between vehicles that are within their closely regulated industry exception and those that are not. We submit that, as I noted earlier, where you have a vehicle that is specifically licensed for local commercial and has a farm tab, that vehicle is lawfully prohibited from carrying people or property for hire. Therefore, that's a very clear, visible signal to law enforcement that this is not a vehicle that you can subject to a suspicionless search. Now, if they observe some other condition suggesting that there is a violation of some law, they of course would then have probable cause and they could then engage in a stop and a search at that point if they have probable cause. But the constitutional infirmity of this statute and its challenge subsections is that it does not require any probable cause at all. It authorizes searches to take place without any suspicion at all that either the driver or the vehicle is in violation of the law. And that is in fact the situation that Mr. Calzone was in. When it comes to regulating these heavy vehicles over a certain weight, why do you think it makes a constitutional difference whether the vehicles are being used for local commercial use or for hire? I want to make sure that I reserve time, but I also want to answer your question, your honor. The difference is that if it's licensed for local commercial use, it cannot, as a matter of law, lawfully be used for hire. The state law prohibits that. I'm saying when it comes to whether it's a regulated industry, why can't the state regulate heavy vehicles that are used for local commercial use? And why isn't that, why doesn't that qualify as a... So your honor, regulating property or regulating items is different from regulating business. The closely regulated industry exception focuses on business, business regulations. If you could regulate any property associated with an industry, then you could have private wine cellars inspected because they're heavily regulated liquor sales persons. You could have private firearms collectors inspected because firearms sales are heavily regulated. I'd like to make sure that I reserve the rest of my time. You think local commercial use is not a business? It's not, your honor. It's not a business use? Local commercial activity is not a business? No, your honor. The local commercial label is just a label. It doesn't designate that this person is holding themselves out for hire to... What the farm tag does, right? I mean, if you look at it, not holding them out for hire, but it's going to be used in commercial activity generally. And so you're taking a 27 ton truck that poses unique safety concerns. It's issued a special license that is limited to commercial farm vehicles. And the inspection is all about safety. And that's an unreasonable search under the fourth amendment. So your honor, to respond to that, the heavily regulated or the closely regulated industry exception doesn't just say if there's commercial activity that's regulated, you fall within it. I would suggest to the court the case of Zada versus Robinson. It's 902 F3 483. This was a fifth circuit case that was just handed down August 31st, I think two days before I had to file my reply brief. So I wasn't able to cite it, but they talk about different types of regulation and the medical regulations and they analyze it from different perspectives. And I think that that would be helpful for the court. Thank you. Thank you. What's the site that you think we should look at? 902 F3 483. And that's a fifth circuit case from August 31st. It also references U.S. versus Ford, which may be helpful. Mr. Reed. Thank you. Judges, may I please the court, Peter Reed for the Highway Patrol. There are really two parts of the question before the court today. One is the constitutionally permissible scope of the closely regulated industry exception. And the second is the actual scope of Missouri's regulatory scheme. So starting with the constitutional scope, the first time this case was up before this court, the court held that Missouri's regulatory scheme for commercial trucking protects Missouri motorists and Missouri roads from the unique safety concerns that arise from overweight commercial vehicles. Consistent with that interest, following Berger's factors, Missouri may define the commercial trucking industry to include all operators of large commercial vehicles pose the same safety concerns. And when we look at Missouri's regulatory scheme, we find that Missouri does in fact define the commercial trucking industry to include all operators of commercial vehicles. Does the vehicle have to be used in a certain type of commercial activity to be labeled a commercial vehicle? No, Your Honor. When it comes, I think, to the scope of the constitutional exception, the court should look to Berger's factors. And in fact, the findings this court made the first time it heard this case. In that case, looking to Berger, which defines the industry according to the state's interest. The state's interest is in the safety concerns that arise from overweight commercial vehicles. I think my opponent makes a mistake when he limits that industry either to motor carriers or to commercial use for hire. And I think we heard him use both of those terms a number of times. Both of those limitations err for, I think, three different reasons. The first is because it ignores Berger's factors in the actual interest that is at stake in this case. Because the interest at stake is the unique safety concerns that arise from overweight commercial vehicles, it is appropriate for the state to define the commercial trucking industry to include all operators of commercial vehicles. And I think the second mistake there is that limiting commercial trucking industry only to long-haul motor carriers excludes a whole lot of uses of overweight commercial vehicles. This is one example of that. Farming operations often use large, overweight commercial vehicles on Missouri roads. But there are a lot of other examples of this, too. Short-haul motor carriers, when Dean's Dairy takes their load of milk to my local convenience store, that's a large commercial vehicle. It's not long-haul motor trucking. Yes, that driver is exempt from some federal regulations that apply to long-haul motor carriers, but it's still a large commercial vehicle and it still should be part of the commercial trucking industry. There are a lot of other examples of this as well. For example, busing. Busing, your local Greyhound bus, whether it's cross-country or local, that's a large commercial vehicle and both under federal law and state law is treated as a overweight commercial vehicle. Construction vehicles would be another example. And so when you artificially narrow this definition of the industry, you exclude a whole lot of the commercial trucking industry as it is regulated under federal and state law. When it comes to the for-use limitation, I think that is even weaker because Walmart or Dean's Dairy or any cross-country carrier might move their own stuff, but that doesn't mean they're not part of the commercial trucking industry. It might not be a commercial truck for hire because Walmart might not hire a third party. They might move their own stuff. But we're still within the same industry. We're the reason we're talking about the same thing is because of the state's interest in regulating overweight commercial vehicles. And I think the third reason why that my opponent's definition of the commercial trucking industry is artificially narrow is because, respectfully, I think Mr. Calzone is using his truck for commercial purposes. And there are at least three bases for this. One is the registration. He registered his vehicle for local commercial use. Two, on the side of his truck is the name of his business. It says right there, this is what this truck is being used for to advance Mr. Calzone's farming operation. And three, in his own complaint, and this is paragraph 18, he says, what do I use my truck for, quote, in support of his cattle and horse ranch. He's using it to advance his own commercial interests in the same way that Dean's This is not an F-350 kind of case. This is a very large, heavy dump truck that is being appropriately regulated as an overweight commercial vehicle. What do you mean by an F-350 sort of case? What does that mean? Your Honor, in the briefing, Mr. Calzone raises some examples, and he raised them again today, about how you shouldn't be able to regulate your average pickup truck or a Ford F-350. Ford F-350, excuse me. To a particular type. Yes. It would be used for personal use. Right, exactly. So this isn't all in the briefing, but the Federal Department of Transportation categorizes trucking. There's a range of classes, right, according to the weight rating. Would that truck be over the weight limit? Exactly. So no, that truck would be 10,000 pounds, or would be over 10,000 pounds is considered a class three rating. And under the Federal regulations, anything class three or above is considered a commercial vehicle. Mr. Calzone's truck at 27 tons, which is way larger than that five-ton limit, you know, over five times that size, is easily a large commercial vehicle. Would the F-350 be swept into? No, it would not. It's under 10,000? That's right. So it's actually rated at exactly 10,000. There's a 10th circuit case, I believe it was the Herrera case, that involved an F-350. And that's, Your Honor, why in Herrera, that was not considered a large commercial vehicle. It simply fell outside of the statutory definition. Moving to the scope of Missouri's regulatory scheme, I think there's a related question here. And Mr. Calzone raised it again today, which is, he suggests that the statutory definition of a commercial motor vehicle is overbroad under Missouri law. I don't think that question is in front of the court today because of the size of Mr. Calzone's dump truck. Under any definition of a commercial vehicle, a 27-ton dump truck is a commercial vehicle. There may be a future case, and my client, the Highway Patrol, would say, we're not stopping pickup trucks as commercial vehicles. We're not conducting warrantless inspections like this one for those kind of small vehicles. But if that case arose, maybe there would be a question of whether Missouri's regulatory scheme is overbroad as applied to that smaller vehicle. I don't think that case would ever come up because that's not the way the scheme is enforced. But this court can protect against that kind of case by simply reaffirming what it said the first time this case was up, which is, Missouri's interest is in regulating and protecting Missouri motorists and because the scope of the constitutional exception is limited to that interest, to protecting against the unique safety concerns from overweight commercial vehicles, that would also take care of any question or problem of whether Missouri law could ever be used to apply to some kind of mid-sized sedan. You mean by its terms, the Missouri law would apply to a mid-sized sedan? It's just an enforcement discretion that's leading to... I would disagree with that. So the definition of a commercial motor vehicle under Missouri law does not include a weight limit. Some of Missouri's regulations, the safety regulations especially, incorporate the federal definition, which does contain a weight limit. The state limit talks about a vehicle that is designed or actually used to move freight. And I think that the plain meaning of those terms is large vehicles, not to personal use vehicles. But again, I think that the court doesn't need to be concerned about that definition in this case because we're dealing with something that obviously is a commercial vehicle under any definition. And that moves me, I think, to the regulatory scheme itself. Again, as a commercial motor vehicle is defined, Mr. Commercial Vehicle, the inspection statute provides Mr. Gelsown notice that if he's going to drive a 27-ton dump truck on Missouri roads that is licensed for local commercial use, he is going to be subject to warrantless inspection stops. And the statute also appropriately cabins the discretion of the officer. As this court noted, the first time this case was up, the statute limits the scope of the officer's inspection discretion during examination for regulatory compliance. And these kind of inspections for regulatory and compliance are important for all overweight vehicles and apply to all overweight vehicles for things like to make sure that the vehicle has the right kind of equipment. It's hard to stop a 27-ton vehicle. It's a lot harder to stop than a smaller vehicle. And so that's part of the inspection questions that have the right equipment. Large commercial vehicles tend to have large loads. So there are regulations governing load size and load security and what happens if the load isn't properly secured and something falls off. Those kind of regulations apply to Mr. Gelsown's dump truck the same way they would apply to a semi truck. And it makes good sense for Missouri's inspection statute to encompass all such vehicles for those safety regulations. I'd like to make one final point just to make the court aware of a few other cases in this area. The briefs containing a lot of tables about how many regulations apply to this versus how many apply to motor carriers. I think at least in two circuits, that would be the wrong question to ask. The First Circuit in the Maldonado case and the Tenth Circuit in the Mitchell case. In both of those cases, they suggest that once a court has found that there is a regulatory scheme and that an industry is being closely regulated, there's not really a place for the court to be digging through and saying, well, how many exceptions apply to Vehicle X and how many exceptions apply to Vehicle Y? It's once there's a scheme, the state can appropriately regulate within that scheme. And I think that makes a lot of sense because Missouri's clearly going to regulate buses differently than dump trucks. It's going to regulate 18 wheelers differently than short haul, long haul differently than short haul. And so what both Maldonado and Mitchell say is that once you've found in a burger that there is a regulatory scheme, you don't just kind of redo the same analysis under a given set of facts. You've found a regulatory scheme and that fits with the administrative search exception, right? You have an administrative search policy. The question is whether that policy is being correctly applied. And here I think it absolutely was because Mr. Calzone's 27 ton dump truck did in fact fall within that scheme and is in fact regulated under that scheme. Is there anything in the record that tells us what the farm designation is? And the reason I ask is simply in some states, farm designations may be given on a license just for any vehicle used on a farm because they pay a lesser rate. And in other states, farm designations are related to vehicles of a certain weight or greater. And I just wonder what the Missouri law is. Sure. Let me tell you, tell me if this answers your question. There are a few different markings on Mr. Calzone's truck. The first designates it as a local commercial vehicle. And all that means is that certain local vehicles don't require a CDL license unless they're being used for hazardous materials. Mr. Calzone has a CDL license, but he says he doesn't need one for this truck because he doesn't use it for hazardous materials. Second, it's marked as a farm vehicle. I believe that's the for hire limitation that my friend on the other side was discussing. And then it also marks the vehicle by weight class. So wait, slow down. Sure. It's marked as a farm vehicle and that's the for hire designation? I believe so. What do you mean by that? Yeah, there are three different markings. And I believe local commercial use is, and my opponent can correct me if I'm wrong on this, but local commercial use means only within 50 miles. The farm vehicle means it's a farm vehicle, so it's subject to certain exceptions. And one of those, one of the limitations for the farm marking is that it can't be used for hire. Cannot be. Cannot be used for hire. And then the third marking is the weight class, which is, it's rated for 54,000 pounds, which is 27 tons, which means it can move up to 27 tons. And again, Missouri is going to regulate different weighted vehicles differently. And so the licensing and registration takes that into account. There's a different fee depending on how heavy the truck is. And in this instance, the highway patrol officer could see, look, this is a large truck. It's weighted. It's rated for 54,000 pounds. This is the kind of truck that needs to be inspected or can be inspected for compliance with safety regulations. The court has. Thanks, Mr. Reed. Mr. Rowland, we reeled you pretty good first go around and used up some of your rebuttal. We'll give you two minutes to conclude the argument. Thank you, Your Honor. If the court will consult page 10 of our reply brief, we point out the importance of the local commercial designation and the farm designation. We specifically cite Missouri Revised Statute 301.010, subsection 27, and also 12 CSR 10-23.300. Those are the applicable laws there. The government has engaged in a little bit of sleight of hand. Mr. Calzone is not arguing that his truck can't be regulated. That's not the issue. Missouri can and does regulate large vehicles. He's required to take his truck in for regular inspections. Matter of fact, the record shows he had his truck inspected just two hours before he got pulled over by the highway patrol officer in this case. So they do regularly inspect large vehicles and Mr. Calzone is not contesting that. The question here is whether the government can engage in suspicionless stops of these vehicles. And the U.S. Supreme Court has repeatedly said suspicionless stops have to be limited to where you're dealing with a closely regulated industry so that the people who are engaging in that industry, making money in that industry, have voluntarily surrendered their Fourth Amendment protections so they can profit. That is not Mr. Calzone in this case. Your Honors, we ask that this case be reversed and that it be, that judgment be entered in favor of Mr. Calzone and an injunction be entered stating that the highway patrol may not engage in suspicionless stops of vehicles that as a matter of law are not permitted to carry property or people for hire. Thank you, Your Honors. Thank you, Mr. Rolla. Court wishes to thank both counsel for coming to argument today and providing helpful information to us and logical reasoning. We will take the case under advisement, under decision.